IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY NAPIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARIA PAPPAS, in her official capacity as Treasurer and *Ex Officio* County Collector of Cook County; MONICA GORDON, in her official capacity as Clerk of Cook County, COOK COUNTY, ILLINOIS, an Illinois political subdivision unit of government; KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois, and DAVID HARRIS, in his official capacity as Director of the Illinois Department of Revenue, | ) Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, GARY NAPIER, by and through undersigned counsel, and for his Complaint against Defendants, MARIA PAPPAS, in her official capacity as Treasurer and *Ex Officio* County Collector of Cook County; MONICA GORDON, in her official capacity as Clerk of Cook County, COOK COUNTY, ILLINOIS, an Illinois political subdivision unit of government; KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois; and DAVID HARRIS, in his official capacity as director of the Illinois Department of Revenue, states and alleges as follows:

## INTRODUCTION

The Fifth Amendment to the United State Constitution bars the State of Illinois, or any county therein, from seizing property from its owners for the purpose of collecting delinquent property taxes, while in the process forever depriving the property owner of the surplus equity in said property without compensation. *See* U.S. Const. amend. V. The United States Supreme Court has ruled that such action is an unconstitutional taking of the owners' property. Yet, in Illinois this practice persists.

The Cook County property tax sale system, which implements the Illinois Property Tax Code, 35 ILCS 200/1-1 *et seq.*, unconstitutionally deprives a property owner who fails to pay overdue property taxes of not just their property to the extent it is taken to satisfy the amount of the tax debt, but of all of the surplus equity in the property possessed by the owner; *i.e.* - the market value of the property over and above what the owner owes in overdue taxes, penalties, interest and costs. The County Defendants sell the delinquent taxes to a private party investor-called a "tax purchaser"—who pays the past due taxes and, in exchange, receives the right to take ownership of the property if the property is not redeemed through payment of the taxes, plus all accrued penalties and interest by a deadline known as the "redemption date." Alternatively, if the property is not sold, it is forfeited to the county or state. If the property is not "redeemed" by paying all amounts due in taxes and related charges by the redemption date, the tax lien

certificate holder is entitled to a tax deed to the property, upon which will transfer ownership of the property free and clear, no matter how much it was worth in excess of the unredeemed taxes and related charges.

Neither the tax purchaser nor the County reimburses the property owner for their lost surplus equity. Therefore, a property tax sale, where the owner cannot or does not successfully redeem, will ultimately result in a total loss to the owner of not just the property to the extent of the amount of the taxes due, but also the entire value of the property over and above the tax amounts owed.

Plaintiff Gary Napier is a residential property owner in Matteson, Cook County, who both has surplus equity in his residential property and is delinquent in his property tax payments to Cook County. His property has been seized and auctioned pursuant to statute, and though Napier still has title to his property for the moment, Plaintiff's property faces two tax sales, one with a tax deed petition filed, imminently threatening to strip his approximately $120,000.00 surplus equity from him without compensation, violating his constitutional rights under both the federal and Illinois constitutions. He is under constant threat that at any time, the tax purchaser would own Napier's property and Napier would permanently lose all surplus equity he has in the property. As long as his property taxes remain unpaid, he risks having his entire property taken for the amount of the tax debt owed plus interest and costs, without receiving compensation for the surplus value.

Napier asserts his constitutional rights against the County Defendants for

their continued threats of constitutional violations against Napier, and the State Defendants for their unconstitutional scheme which violates Napier's constitutional rights, not to mention the rights of all persons facing the loss of surplus equity due to property tax delinquency in the State of Illinois. Napier is entitled to declaratory and injunctive relief barring this unlawful conduct.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201, 2202 and 42 U.S.C. § 1983. The Court has jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367.

2. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Gary Napier is a natural person and a citizen of the United States. He resides in the Village of Matteson, County of Cook, State of Illinois. Napier owns residential property in Matteson, but owes Cook County for property tax assessments.

4. Defendant Maria Pappas is sued in her official capacity as the Treasurer and *Ex Officio* County Collector of Cook County, Illinois. As such, she maintains her principal offices at 118 North Clark Street, Unit 112, Chicago, IL 60602.

5. Defendant Pappas administers the property tax statutes for Cook County, pursuant to 35 ILCS 200, *et seq.* She is the Cook County official who mails

4

delinquent tax notices (35 ILCS 200/20-5), advertises the tax delinquent property for sale and notices the tax assessee of the pending sale (35 ILCS 200/21-110, 21-135), sells tax delinquent properties (35 ILCS 200/21-190), and establishes rules of the property sale (35 ILCS 200/21-205). Defendant Pappas's ongoing enforcement of 35 ILCS 200/Tit. 7 against Cook County residents places Plaintiff Napier under imminent threat of having his property seized and deeded to a tax purchaser, which would result in him being permanently deprived of his surplus equity in his property without compensation.

6. Defendant Monica Gordon is sued in her official capacity as the Clerk of Cook County, Illinois. As such, she maintains her principal offices at 118 North Clark Street, Chicago, IL 60602.

7. Defendant Gordon is responsible for enforcing the complained-of laws by sending out statutory notices (35 ILCS 200/22-5), preparing estimates of redemption (35 ILCS 200/21-355), preparing and maintaining the judgment and warrant books (35 ILCS 200/21-110, 21-120), memorializing the sales, payments, and dates of redemption (35 ILCS 200/21-360), and executing tax deeds (35 ILCS 200/22-85), among other duties, all of which are integral steps in Illinois' statutory tax sale scheme that effectuates the unconstitutional taking of private property without a compensation mechanism.

8. Defendant Gordon's ongoing enforcement of 35 ILCS 200/Tit. 7 against Cook County residents places Plaintiff Napier under imminent threat of having his property seized and deeded to a tax purchaser, which would result in him being

5

permanently deprived of his surplus equity in his property.

9. Defendant Cook County, Illinois is a public body as defined in 5 ILCS 120/1, *et seq.* Cook County maintains a policy, practice, and custom of seizing property of delinquent property taxpayers, pursuant to 35 ILCS Art. 21, and auctioning that property to winning tax buyers (and sometimes to government entities for no payment), who – after the expiration of a redemption period – can exchange the tax certificate for a tax deed to the delinquent taxpayer's property, including all surplus equity the delinquent taxpayer may have acquired in the property, thus permanently depriving the delinquent taxpayer of said surplus equity. The challenged custom, and policy practice neither serves a valid public purpose, nor serves a solely a remedial purpose.

10. Defendant Kwame Raoul is sued in his official capacity as the Attorney General of the State of the Illinois. In that capacity, he maintains his principal offices at 500 South 2nd Street, Springfield, IL 62702, but also maintains offices throughout the State, including in Chicago in Cook County.

11. Defendant Raoul's ongoing enforcement of the relevant State law against Illinois property owners, including Plaintiff Napier, places Napier under imminent threat of having his property seized and deeded to a tax purchaser, which would result in him being permanently deprived of his surplus equity in the property without compensation.

12. Defendant David Harris is sued in his official capacity as the Director of the Illinois Department of Revenue. In that capacity, he maintains his principal

6

offices at 101 West Jefferson Street, Springfield, IL 62702, but also maintains offices through the State, including in Chicago and Des Plaines in Cook County.

13. Defendant Harris's ongoing enforcement of the relevant State law against Illinois property owners, including Plaintiff Napier, places Napier under imminent threat of having his property seized and deeded to a tax purchaser, which would result in him being permanently deprived of his surplus equity in the property without compensation.

## STATEMENT OF FACTS

### The Statutory Scheme

14. Title 7 of the Illinois Property Tax Code (35 ILCS 200/Tit. 7, *et seq.*) is entitled "Tax Collection," and generally governs the assessment and collection of property taxes within the State of Illinois. Title 7 contains four Articles, which are:

- Article 19 of the Illinois Property Tax Code (35 ILCS 200/Art. 19, *et seq.*) governs the officials responsible for property tax collection at the local level within the State of Illinois.

- Article 20 of the Illinois Property Tax Code (35 ILCS 200/Art. 20, *et seq.*) governs the process for the collection of property taxes within the State of Illinois.

- Article 21 of the Illinois Property Tax Code (35 ILCS 200/Art. 21, *et seq.*) is entitled "Due Dates, Delinquencies, and Enforcement of Payments," and governs – among other related topics – tax liens, sales of properties for delinquent taxes, and redemption of auctioned properties within the State of Illinois.

- Article 22 of the Illinois Property Tax Code (35 ILCS 200/Art. 22, *et seq.*) governs the procedures by which a tax purchaser petitions for, and receives, a tax deed for an auctioned property within the State of Illinois.

15. Under the Property Tax Code, a delinquent taxpayer will have his or her property seized by the County (and its Treasurer acting as *Ex Officio* County Collector) in which the property sits, then either auctioned to a tax purchaser or government entity who receives a tax certificate from the County and its County Collector in exchange for payment of the delinquent taxes. The tax purchaser then is entitled to payments of interest and costs on the unpaid taxes, which the property owner must pay in full in order to redeem the property during a statutory redemption period. If the property is not redeemed through a full payment the Circuit Court may order that a tax deed be issued which upon recording vested the tax certificate holder or its assignee with ownership of the property and its full value, while the property owner is dispossessed not only of the property, but of all the surplus equity the property owner had owned. *See* 35 ILCS Art. 21.

16. The tax sale process in Illinois is governed by 35 ILCS 200/Art. 21, *et seq.* through which the Illinois General Assembly exercises its power to collect revenue on behalf of the People of Illinois, delegating enforcement to Defendant Pappas as County Treasurer and *Ex Officio* County Collector of Cook County, Illinois, who applies for judgments and issues certificates of purchase in the name of the People of Illinois (35 ILCS 200/21-180, 21-250). The process provides for the sale of tax delinquent real property (35 ILCS 200/21-190) subject to the right to redemption enshrined in State statutes and the Illinois Constitution. The sale of the property is memorialized through a Certificate of Purchase entitling the holder to redemption monies or to a tax deed if unredeemed (35 ILCS 200/21-240, 22-40).

17. The process authorizes the divesture of all equity in the property, including surplus equity (*i.e.* value of the property in excess of the tax and tax collection amounts), without compensation, upon issuance of a tax deed, regardless of whether title vests in a private buyer or the county, and neither considers nor accounts for the property's value relative to the tax debt at any stage beyond initial assessment, ensuring no mechanism exists to compensate owners for surplus equity. The legislature lacked authority to enact such a draconian statute, which intentionally forfeits all surplus equity - contrary to the Illinois and U.S. Constitutions.

**Impact on Plaintiff**

18. Napier is the sole owner and resident of the real property identified by Permanent Real Estate Index Number (PIN): 31-23-311-022-0000, located at an address commonly known as 21145 Maple St., Matteson, Illinois 60443 (the "Home"). Napier acquired his Home in 1999 with his late wife, Karen L. Napier, as tenants by the entirety. Following Karen's death on April 14, 2018, Napier became and remains the sole owner of his Home.

19. Napier is a United States Navy veteran with service-connected disabilities, and his Home has been specially adapted to accommodate his disability-related needs; it is also where he raised his daughter with his late wife, Karen, making it a cornerstone of his family's history and the main source of stability in Napier's life.

20. Deemed as disabled by the Department of Veterans Affairs since 1991

and now over 65 years old, Napier faces the loss of his unencumbered Home through Illinois' statutory tax scheme, which threatens to take his substantial equity without compensation.

21. Napier fell delinquent on property taxes, and the Home is subject to tax sales:

    i. 2020 Taxes: On November 16, 2022, Defendant Pappas sold the Home for 2020 general taxes (Cert. No. 20-0002148). The redemption period expired on May 22, 2025. A petition for tax deed has been filed.

    ii. 2021 Taxes: On January 10, 2024, Defendant Pappas sold the Home for 2021 general taxes (Cert. No. 21-0001952). The redemption period expires on July 16, 2026. A petition for tax deed has not been filed. The certificate of purchase holder also paid the 2022 and 2023 property taxes.

22. For $793.00, Defendant Maria Pappas, in her official capacity as County Treasurer and *Ex Officio* County Collector of Cook County, Illinois sold Napier's Home for unpaid taxes for the 2020 tax year.

23. Defendant Pappas sold Napier's Home again for $2,637.01 based upon a 2021 tax delinquency.

24. The Property's most recent market value as determined and published by the Cook County Assessor's Office is $130,000.00.

25. The tax sale process threatens to take Napier's surplus equity in his Home (approximately $120,000.00) without just compensation by authorizing the taking of all equity in the Home beyond the tax debt.

26. The current cost to redeem Napier's Home from both tax sales is

approximately $11,526.47.

27. Napier did not redeem the Home by making payment in full by May 22, 2025 as to the 2020 property tax sale, Napier may lose title, possession, and all surplus equity in his Home by divesture through a tax deed.

28. Other than the tax delinquencies, the Home is otherwise unencumbered. Napier holds his Home free and clear. He has paid off his mortgages, and there are no recorded liens against his Home. Napier would have paid the relevant property taxes but for being unable to do so. He did not abandon his property, nor did he intend to do so.

29. His property has been seized, auctioned and sold by Pappas and Cook County in order for those Defendants to obtain payment of those property taxes, pursuant to 35 ILCS Art. 21.

30. Napier has not been able to redeem due to his financial and health situation.

31. Napier's Home (with its surplus equity) will thus be forfeited, pursuant to the relevant sections of the Illinois Property Tax Code and Cook County policy. Napier's property taxes have been twice sold, and it is expected that Defendants will imminently take and convey Napier's surplus equity in his Home to the tax purchaser without providing Napier due compensation.

32. As a direct and proximate result of the County Defendants' actions and state law as enforced by the State and County Defendants, Napier will lose all rights in his property, including the value of the surplus equity of the property,

11

which is approximately $120,000.00 and which is sizably more than the sum of all taxes, interest, and penalties owed against the property.

33. Plaintiff's property faces two tax sales, one with a tax deed petition filed, threatening to strip his approximately $120,000.00 surplus equity without compensation, violating his constitutional rights and Illinois' guarantee of a certain remedy for property wrongs (Ill. Const. art. I, § 12).

34. Napier lives under imminent threat that his property will be seized, and that pursuant to 35 ILCS 200/Art. 21, he will lose the value of all the surplus equity in his property when the tax deed transfer, and the payment of the amounts owed due to the delinquent property taxes, is complete.

35. Under Illinois State law and County policy, Napier will not receive any compensation for the surplus equity in his property after a deed is issued to a tax purchaser and he loses ownership of his property.

36. An indemnity fund established by 35 ILCS 200/21-295 *et seq.* may compensate some owners for losses due to tax sales, but does not provide a mechanism to compensate for the taking of surplus equity for any divested property owner (nor was it intended to), restricts access based on criteria such as residency, fault, or property type, while suffering from chronic insolvency and mismanagement. Napier would not qualify for an indemnity fund compensation settlement.

37. In fact, the indemnity fund under 35 ILCS 200/21-295 *et seq.* would not compensate for this taking. Also, payments under the judicial process are

12

discretionary and inadequate under *Tyler v. Hennepin County*, 598 U.S. 631 (2023). The Cook County indemnity fund is chronically insolvent. As of November 2024, Cook County's indemnity fund had a backlog of 278 unpaid judgments totally roughly $33.62 million and a 6.5 year lag in payment. Entitlement to an indemnify fund judgment arbitrarily excludes owners based on residency, fault, or property type, often denying recovery due to nonpayment or underfunding.

<u>COUNT ONE:</u>
<u>UNLAWFUL TAKING – U.S. CONST. AMEND. V – 42 U.S.C. § 1983</u>

38.     Plaintiff incorporates and realleges Paragraphs 1-37, inclusive, as if fully repeated herein.

39.     The Takings Clause of the Fifth Amendment to the United States Constitution, which is incorporated against the States and local governments by the Fourteenth Amendment to the Constitution, forbids counties to take property without just compensation. *See Tyler v. Hennepin County*, 598 U.S. 631 (2023).

40.     By maintaining and enforcing a set of laws that, in the course of a County seizing and auctioning off a taxpayer's property as a means of collecting delinquent property taxes owed to a County, allows the buyer of the auctioned property to keep the surplus equity that rightfully belongs to the dispossessed property owner, Defendants are propagating customs, policies, and practices that violate the Plaintiff's individual right against being subject to unlawful takings under the Fifth Amendment, damaging Plaintiff in violation of 42 U.S.C. § 1983.

41.     Plaintiff is therefore entitled to preliminary and permanent injunctive

relief against such customs, policies, and practices.

WHEREFORE, the Plaintiff, GARY NAPIER, respectfully requests that this Honorable Court:

1. Issue preliminary and permanent injunctions barring Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 35 ILCS 200/Art. 1 in such a manner as to deprive Plaintiff of the value of any surplus equity in his property, as said statutes are facially and as-applied to Napier unconstitutional violations of Napier's Fifth Amendment rights;

2. Enter declaratory relief consistent with the injunction;

3. Award Plaintiff attorney's fees and costs pursuant to 42 U.S.C. § 1988;

4. Award Plaintiff the ordinary costs of suit; and

5. Grant Plaintiff any and all further relief as this Court deems just and appropriate.

## COUNT TWO:
## EXCESSIVE FINES – U.S. CONST. AMEND. VIII – 42 U.S.C. § 1983

42. Plaintiff incorporates and realleges Paragraphs 1-41, inclusive, as if fully repeated herein.

43. The Excessive Fines Clause of the Eighth Amendment to the United States Constitution, which is incorporated against the States and local governments by the Fourteenth Amendment to the Constitution, forbids counties from imposing excessive fines on the people, which includes Napier.

44. The State law, and the County policies following that law, which takes the surplus value from delinquent property taxpayers is punitive, and is designed to punish said delinquent taxpayers while deterring others from failing to pay their property taxes.

45. These fines are disproportionate, and therefore excessive in violation of the Eighth Amendment. *See Timbs v. Indiana*, 139 S. Ct. 682, 693 (2019); *Tyler v. Hennepin County*, 598 U.S. 631 (2023) (concurrence).

46. Here, the single offense of failure to pay property taxes, which was as low as a few thousand dollars, is resulting in a sanction of all of Napier's surplus equity, which is almost equivalent to the entire fair market value of the property.

47. Napier is subject to the constant threat of an excessive fine as the County Defendants – under State law - are imminently and inevitably set to impose a forfeiture on Napier far in excess of the underlying amounts owed relating to his property tax delinquency by seizing and permanently depriving Napier of the surplus equity in his property. This is unconstitutionally disproportionate and excessive in violation of the Eighth Amendment's excessive-fines clause.

WHEREFORE, the Plaintiff, GARY NAPIER, respectfully requests that this Honorable Court:

1. Issue preliminary and permanent injunctions barring Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 35 ILCS 200/Art. 1 in such a manner as to deprive Plaintiff of the value of any

surplus equity in his property, as said statutes are facially and as-applied to Napier unconstitutional violations of Napier's Eighth Amendment rights;

    2.    Enter declaratory relief consistent with the injunction;

    3.    Award Plaintiff attorney's fees and costs pursuant to 42 U.S.C. § 1988;

    4.    Award Plaintiff the ordinary costs of suit; and

    5.    Grant Plaintiff any and all further relief as this Court deems just and appropriate.

## COUNT THREE:
## UNLAWFUL TAKING – ILL. CONST., ART. I, § 15

    48.    Plaintiff incorporates and realleges Paragraphs 1-47, inclusive, as if fully repeated herein.

    49.    The Illinois State Constitution provides in relevant part: "Private property shall not be taken or damaged for public use without just compensation as provided by law." Ill. Const. 1970, art. I, § 15.

    50.    By maintaining and enforcing a set of laws that, in the course of a County seizing and auctioning off a taxpayer's property as a means of collecting delinquent property taxes owed to a County, allows the buyer of the auctioned property to keep the surplus equity that rightfully belongs to the dispossessed property owner, Defendants are propagating customs, policies, and practices that violate the Plaintiff's individual right against being subject to unlawful takings under Article 1, § 15 of the Illinois Constitution.

    51.    Plaintiff is therefore entitled to preliminary and permanent injunctive

relief against such customs, policies, and practices.

WHEREFORE, the Plaintiff, GARY NAPIER, respectfully requests that this Honorable Court:

1. Issue preliminary and permanent injunctions barring Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 35 ILCS 200/Art. 1 in such a manner as to deprive Plaintiff of the value of any surplus equity in his property, as said statutes are facially and as-applied to Napier unconstitutional violations of Napier's rights under Article 1, § 15 of the Illinois Constitution;

2. Enter declaratory relief consistent with the injunction;

3. Award Plaintiff the ordinary costs of suit; and

4. Grant Plaintiff any and all further relief as this Court deems just and appropriate.

## COUNT FOUR: EXCESSIVE FINES – ILL. CONST. ART. 1, § 5

52. Plaintiff incorporates and realleges Paragraphs 1-51, inclusive, as if fully repeated herein.

53. Article 1, § 5 of the Illinois Constitution forbids imposing excessive fines on the people, which includes Napier.

54. The State law, and the County policies following that law, which takes the surplus value from delinquent property taxpayers is punitive, and is designed to

punish said delinquent taxpayers while deterring others from failing to pay their property taxes.

55. These fines are disproportionate, and therefore excessive in violation of Article 1, § 5 of the Illinois Constitution.

56. Here, the single offense of failure to pay property taxes, which was as low as a few thousand dollars, is resulting in a sanction of all of Napier's surplus equity, which is almost equivalent to the entire fair market value of the property. Defendant's confiscation of all of Napier's property interests – including surplus equity in the Home- is not solely remedial and bears no correlation to any actual loss of tax revenue or costs of enforcing the tax laws attributable to wrong doing by Napier.

57. Napier is subject to the constant threat of an excessive fine as the County Defendants – following State law - are imminently and inevitably set to impose a forfeiture on Napier far in excess of the underlying amounts owed relating to his property tax delinquency by seizing and permanently depriving Napier of the surplus equity in his property. This is unconstitutionally disproportionate and excessive in violation of the Illinois Constitution's excessive-fines clause in Article 1, § 5.

WHEREFORE, the Plaintiff, GARY NAPIER, respectfully requests that this Honorable Court:

1. Issue preliminary and permanent injunctions barring Defendants, their officers, agents, servants, employees, and all persons in active concert or

participation with them who receive actual notice of the injunction, from enforcing 35 ILCS 200/Art. 1 in such a manner as to deprive Plaintiff of the value of any surplus equity in his property, as said statutes are facially and as-applied to Napier unconstitutional violations of Napier's rights under Article 1, § 5 of the Illinois Constitution;

      2.     Enter declaratory relief consistent with the injunction;

      3.     Award Plaintiff the ordinary costs of suit; and

      4.     Grant Plaintiff any and all further relief as this Court deems just and appropriate.

Dated: May 27, 2025                                               Respectfully submitted,

                                                                     /s/ David G. Sigale
                                                                         Attorney for Plaintiff

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com

Attorney for Plaintiff Gary Napier